UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UBER TECHNOLOGIES, INC., UBER USA, LLC, RASIER-NY, LLC, RASIER, LLC, VIERZEHN-NY, LLC, and RASIER-CA, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> MAYA ASSURANCE COMPANY, <br><br> Defendant. | Civil Action No. <br><br> **COMPLAINT** |

---

Plaintiffs Uber Technologies, Inc., Uber USA, LLC, Rasier-NY, LLC, Rasier, LLC, Vierzehn-NY, LLC, and Rasier-CA, LLC (collectively "Uber"), by their undersigned attorneys hereby allege as follows against Defendant Maya Assurance Company ("Defendant" or "Maya"):

## SUMMARY OF THE ACTION

1.     This is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 and for money damages for breach of contract, whereby Uber seeks to enforce Maya's contractual obligations to Uber in five bodily injury lawsuits filed against Uber in New York (the "Underlying Lawsuits"). A list of the Underlying Lawsuits is attached as **Exhibit A**. Maya has consistently and systematically failed its named insureds—for-hire drivers in New York City licensed by the Taxi & Limousine Commission ("TLC"). Maya has a pattern and practice of failing to adhere to reasonable claims-handling practices and failing to reasonably resolve claims and lawsuits on its insureds' behalf. Maya's detrimental conduct has negatively impacted thousands of New York City for-hire drivers. This has had a knock-on effect of provoking unnecessary tort litigation involving insured for-hire drivers and Uber, whereby Maya has, in practice, forced claimants to

ask Uber to unreasonably step into the shoes of Maya's insurance coverage obligations. Uber must bring this action to overcome Maya's unreasonable practices and to enforce Maya's obligation of good faith to its insureds. As detailed below, Uber seeks to enforce the contractual obligations Maya owes Uber, confirm Maya's primary insurance obligations of defense and indemnity to Uber as its insured, and to recover the defense and indemnity costs Uber has incurred in connection with the Underlying Lawsuits (*see* **Exhibit A**).

2.      Each of the Underlying Lawsuits arises out of motor vehicle accidents where a) TLC drivers (the "Drivers") were utilizing Uber's Rides Platform (the "Uber App") at the time of the accident for lead generation and payment processing services and b) the Drivers are alleged to be at fault for bodily injury to a rider or third party.

3.      Each Underlying Lawsuit alleges that Uber is liable for the conduct of the allegedly at-fault Driver.

4.      Pursuant to TLC regulations, each Driver maintained a commercial auto liability policy issued by Maya (individually a "Maya Policy", and collectively the "Maya Policies").

5.      Each Maya Policy provides coverage for Uber for the Underlying Lawsuits because the Underlying Lawsuits allege Uber is liable for the conduct of the Drivers.

6.      Uber requested that Maya defend Uber in the Underlying Lawsuits and indemnify Uber to the extent of its alleged liability for the conduct of the Drivers under the Maya Policies.

7.      Maya refused to honor its contractual obligations and denied coverage under the Maya policies.

8.      Uber has paid substantial amounts to defend the Underlying Lawsuits and will continue to pay substantial amounts to defend the Underlying Lawsuits.

9.      Further, Uber will incur additional damages in settlements and judgments for the Underlying Lawsuits, to the extent of Uber's alleged legal liability for the conduct of the Drivers.

10.     Uber seeks a declaration of the rights, duties, and obligations of Maya and Uber under the Maya Policies. Specifically, Uber seeks the following declaratory relief:

Pursuant to 28 U.S.C. § 2201, a declaration that Maya is obligated under the Maya Policies (more fully described below) to (1) defend Uber against the Underlying Lawsuits, (2) allow Uber to select counsel of its choice to defend it in the Underlying Lawsuits, and timely pay Uber for reasonable defense fees and costs, and (3) indemnify Uber to the extent of Uber's alleged legal liability for the conduct of the Drivers.

11.     Actual controversies exist between Uber and Maya for which a declaratory judgment setting forth the parties' rights, duties, and obligations is necessary. Such a declaratory judgment, if entered, will terminate the uncertainty or controversy giving rise to this proceeding.

12.     In addition, Uber seeks money damages and other relief from Maya for its breaches of contract in failing to defend and indemnify Uber against the Underlying Lawsuits. Specifically, Uber seeks money damages resulting from Maya's breaches of the contractual obligations set forth in the Maya Policies, including Maya's failure to (1) pay the defense costs incurred by Uber in defense of the Underlying Lawsuits and (2) indemnify Uber to the extent of Uber's alleged legal liability for the conduct of the Drivers.

## THE PARTIES

13.     Plaintiff Uber Technologies, Inc. ("Uber Technologies") is a Delaware corporation with its principal place of business in San Francisco, California.

14.     Plaintiff Uber USA, LLC ("Uber USA") is a Delaware limited liability company and is a wholly owned subsidiary of Uber Technologies.

15.     Plaintiff Rasier, LLC[1] is a Delaware limited liability company and is a wholly owned subsidiary of Uber Technologies.

16.     Plaintiff Rasier-NY, LLC[2] is a Delaware limited liability company and is a wholly owned subsidiary of Rasier, LLC. Rasier, LLC is a Delaware limited liability company and is a wholly owned subsidiary of Uber Technologies.

17.     Plaintiff Rasier-CA, LLC is a Delaware limited liability company and is a wholly owned subsidiary of Rasier, LLC. Rasier, LLC is a Delaware limited liability company and is a wholly owned subsidiary of Uber Technologies.

18.     Plaintiff Vierzehn-NY, LLC is a Delaware limited liability company and is a wholly owned subsidiary of Uber USA. Uber USA is a Delaware limited liability company and is a wholly owned subsidiary of Uber Technologies.

19.     Upon information and belief, Defendant Maya Assurance Company ("Maya") is a New York corporation with its principal place of business in Long Island City, New York. Defendant is engaged in the business of selling insurance and does business in the State of New York.

## JURISDICTION AND VENUE

20.     This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), because this is a civil action between citizens of a state and a citizen of a foreign state in which the amount in controversy exceeds $75,000, exclusive of interest and costs. The Court has jurisdiction over this declaratory judgment action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

---

[1] Some Underlying Lawsuits mistakenly refer to Rasier, LLC as "Raiser, LLC."
[2] Some Underlying Lawsuits mistakenly refer to Rasier-NY, LLC as "Raiser-NY, LLC."

21.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because this action arises out of contracts of insurance to insure persons, property, or risk located within this District at the time of contracting and because a substantial part of the events giving rise to the claim occurred in this District.

22.     This Court has personal jurisdiction over Maya by virtue of Maya's sale of insurance policies and significant business activities within this District.

## UBER AND THE DRIVERS

23.     Uber Technologies is a technology company that uses its proprietary technology to develop and maintain digital multi-sided marketplace platforms. As is relevant here, Uber Technologies developed the Uber App to connect independent drivers and riders seeking transportation services.

24.     In New York City, drivers licensed by the TLC operating for-hire vehicles who wish to utilize Uber's lead-generation and payment processing services contract with Uber Technologies' wholly owned subsidiary, Uber USA, to utilize the Uber App.

25.     To gain access to the Uber App, each Driver consented to either a Technology Services Agreement or Platform Access Agreement, including addenda, depending on the date of the agreement (the "Agreements"). The Agreements outline the respective rights and responsibilities relating to the Driver's use of the Uber App.

26.     Pursuant to the Agreements and the TLC's rules and regulations, each Driver agreed to maintain commercial automobile liability insurance that provides protection against bodily injury and property damage to third parties at levels of coverage that satisfy all applicable laws. At all times relevant hereto, the minimum level of commercial auto liability coverage for TLC-licensed vehicles in New York was $100,000.

27.     Pursuant to the Agreements, each TLC vehicle owner ("Customer") or TLC Driver agreed to "maintain during the term of this Agreement on all Vehicles operated by Customer or its Drivers commercial automobile liability insurance that provides protection against bodily injury and property damage to third parties at levels of coverage that satisfy all applicable laws in the Territory. This coverage must also include any no-fault coverage required by law in the Territory that may not be waived by an insured."

28.     Pursuant to the Agreements, each Customer or Driver agreed to "maintain during the term of this Agreement commercial general liability insurance that provides protection against personal injury, advertising injury and property damage to third parties at levels of coverage required by all applicable laws in the Territory."

29.     Pursuant to the Agreements, each Customer or Driver agreed to "add Uber (or any Affiliate which may be designated by Uber from time to time) to Customer's insurance policies required . . .  above as an additional insured, and shall, upon Uber's request, provide Uber with a copy of such insurance certificate(s) within seven (7) days of such request."

30.     Pursuant to the Agreements, each Customer or Driver "shall indemnify, defend (at Uber's option) and hold harmless Uber and its Affiliates and their respective officers, directors, employees, agents, successors and assigns from and against any and all liabilities, expenses (including legal fees), damages, penalties, fines, social security contributions and taxes arising out of or related to: (a) Customer's breach of its representations, warranties or obligations under this Agreement; or (b) a claim by a third party (including Users, regulators and governmental authorities) directly or indirectly related to Customer's provision of Transportation Services or use of the Uber Services. This indemnification provision shall not apply to Customer's or any Drivers' breach of any representations regarding their status as independent contractors."

31.     Pursuant to the Agreements, each Customer or Driver agreed that "As between Customer and Uber, Customer is and shall be solely responsible for its Drivers' provision of Transportation Services. As such, Customer shall indemnify, defend (at Uber's option) and hold harmless Uber and its Affiliates and their respective officers, directors, employees, agents, successors and assigns from and against any and all liabilities, expenses (including legal fees), damages, penalties, fines, social contributions and taxes directly or indirectly arising out of or related to its Drivers' provision of Transportation Services or use of the Uber Services."

## THE UNDERLYING LAWSUITS

32.     Uber has been named a defendant in each of the Underlying Lawsuits.

33.     Each Underlying Lawsuit alleges that a Driver is at fault for bodily injury to a rider or third party arising out of a motor vehicle accident.

34.     Each Underlying Lawsuit alleges that the respective Driver used the Uber App.

35.     Each Underlying Lawsuit alleges that Uber is vicariously liable to the underlying plaintiffs for the conduct of the respective Driver.

36.     Some Underlying Lawsuits allege additional types of liability against Uber.

## THE MAYA POLICIES

37.     Upon information and belief, the Maya Policies are issued on Business Auto Coverage Form ISO CA 00 01 10 13. A sample copy of Maya's Business Auto Coverage forms, including endorsements and notices, is attached as **Exhibit B**.

38.     Upon information and belief, the allegedly at-fault Driver in each Lawsuit maintained a commercial auto liability policy issued by Maya with limits of at least $100,000.

39.     Upon information and belief, under the terms of each Maya Policy, Maya agreed to pay "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property

damage' to which this insurance applies caused by an 'accident' and resulting from the ownership, maintenance, or use of a covered 'auto'."

40.      Upon information and belief, each Maya Policy provides that Maya has the "right and duty" to defend any "insured" against a "suit" seeking damages.

41.      Upon information and belief, each Maya Policy defines "Insured" as:

> **1. Who Is An Insured**
> The following are "insureds":
>> a. You for any covered 'auto'.
>> b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
>>> (1) The owner or anyone else from whom you hire or borrow a covered "auto".
>>> This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.
>>> 2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.
>>> (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.
>>> (4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".
>>> (5) A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.
>> c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

42.      N.Y. Comp. Codes R. & Regs. tit. 11, § 60-1.1 requires that coverage under the Maya Policies extend to any organization with respect to its liability because of acts or omissions of an insured.

43.      Each Driver is an "insured" under the respective Maya Policy each Driver maintained with Maya.

44.     Each Underlying Lawsuit is a "suit" under the respective Maya Policy each Driver maintained with Maya.

45.     The Maya Policies provide primary auto liability coverage for the Drivers for the damages alleged in the Underlying Lawsuits. Maya owes a primary duty to defend and indemnify the Drivers against the damages sought by the plaintiffs in the Underlying Lawsuits.

46.     Uber is an "insured" under each Maya Policy because each Underlying Lawsuit alleges that Uber is liable for the conduct of each allegedly at-fault Driver.

47.     Maya owes a primary duty to defend and indemnify Uber against the damages sought by the plaintiffs in the Underlying Lawsuits.

### THE CAJIGAS LAWSUIT – TENDER & DENIAL

48.     Uber is named as a defendant in the Underlying Lawsuit filed by Jazmin Cajigas on May 2, 2023, in New York Supreme Court, Kings County, Index No. 513079/2023 (the "Cajigas Lawsuit"). The complaint in the Cajigas Lawsuit is attached as **Exhibit C**.

49.     The Cajigas Lawsuit alleges Uber is liable for the conduct of Driver Mostafa Ibrahimi. *See, e.g.*, **Exhibit C**, ¶¶ 53–54.

50.     Upon information and belief, Maya issued Maya Policy No. 1-MA005690 to Driver Mostafa Ibrahimi.

51.     Driver Mostafa Ibrahimi is an "insured" under Maya Policy No. 1-MA005690.

52.     The Cajigas Lawsuit is a "suit" under Maya Policy No. 1-MA005690.

53.     Maya Policy No. 1-MA005690 provides primary auto liability coverage for Driver Mostafa Ibrahimi for the damages alleged in the Cajigas Lawsuit. Maya owes a primary duty to defend and indemnify Driver Mostafa Ibrahimi against the damages sought by the plaintiff(s) in the Cajigas Lawsuit.

54.     Upon information and belief, Maya has defended and/or indemnified Driver Mostafa Ibrahimi against the damages sought by the plaintiff(s) in the Cajigas Lawsuit.

55.     Uber is an "insured" under Maya Policy No. 1-MA005690 because the Cajigas Lawsuit alleges that Uber is liable for the conduct of Driver Mostafa Ibrahimi. *See, e.g.*, **Exhibit C**, ¶¶ 53–54.

56.     On August 9, 2023, Uber, on behalf of itself and/or its relevant subsidiaries, tendered its defense and indemnity to Maya in writing for the Cajigas Lawsuit.

57.     Maya had notice of the Cajigas Lawsuit when Driver Mostafa Ibrahimi or the underlying claimants first tendered the Cajigas Lawsuit to Maya.

58.     On August 17, 2023, Maya disclaimed coverage for Uber in the Cajigas Lawsuit. A copy of Maya's disclaimer letter is attached as **Exhibit D**.

59.     Maya has wrongfully refused to defend and indemnify Uber in the Cajigas Lawsuit.

60.     Uber has been forced to defend itself in the Cajigas Lawsuit.

61.     Uber will continue to incur costs to defend the Cajigas Lawsuit.

62.     Further, Uber will incur additional damages as a result of Uber's alleged liability for the conduct of the Driver in the Cajigas Lawsuit.

## THE ELLIOTT LAWSUIT – TENDER & DENIAL

63.     Uber is named as a defendant in the Underlying Lawsuit filed by Marlon J. Elliott on December 14, 2021, in New York Supreme Court, Queens County, Index No. 727484/2021 (the "Elliott Lawsuit"). The complaint in the Elliott Lawsuit is attached as **Exhibit E**.

64.     The Elliott Lawsuit alleges Uber is liable for the conduct of Driver Christopher Graham. *See, e.g.*, **Exhibit E**, ¶¶ 62–65, 67–70.

65.     Upon information and belief, Maya issued Maya Policy No. 1-MA021796 to Driver Christopher Graham.

66.     Driver Christopher Graham is an "insured" under Maya Policy No. 1-MA021796.

67.     The Elliott Lawsuit is a "suit" under Maya Policy No. 1-MA021796.

68.     Maya Policy No. 1-MA021796 provides primary auto liability coverage for Driver Christopher Graham for the damages alleged in the Elliott Lawsuit. Maya owes a primary duty to defend and indemnify Driver Christopher Graham against the damages sought by the plaintiff(s) in the Elliott Lawsuit.

69.     Upon information and belief, Maya has defended and/or indemnified Driver Christopher Graham against the damages sought by the plaintiff(s) in the Elliott Lawsuit.

70.     Uber is an "insured" under Maya Policy No. 1-MA021796 because the Elliott Lawsuit alleges that Uber is liable for the conduct of Driver Christopher Graham. *See, e.g.*, **Exhibit E**, ¶¶ 62–65, 67–70.

71.     On July 20, 2023, Uber, on behalf of itself and/or its relevant subsidiaries, tendered its defense and indemnity to Maya in writing for the Elliott Lawsuit.

72.     Maya had notice of the Elliott Lawsuit when Driver Christopher Graham or the underlying claimants first tendered the Elliott Lawsuit to Maya.

73.     On July 21, 2023, Maya disclaimed coverage for Uber in the Elliott Lawsuit. A copy of Maya's disclaimer letter is attached as **Exhibit F**.

74.     Maya has wrongfully refused to defend and indemnify Uber in the Elliott Lawsuit.

75.     Uber has been forced to defend itself in the Elliott Lawsuit.

76.     Uber will continue to incur costs to defend the Elliott Lawsuit.

77.     Further, Uber will incur additional damages as a result of Uber's alleged liability for the conduct of the Driver in the Elliott Lawsuit.

### THE NIEVES LAWSUIT – TENDER & DENIAL

78.     Uber is named as a defendant in the Underlying Lawsuit filed by Carmen Nieves on May 31, 2019, in New York Supreme Court, Bronx County, Index No. 29187/2018E (originally filed under Index No. 26407/2019E) (the "Nieves Lawsuit"). The complaint in the Nieves Lawsuit is attached as **Exhibit G**.

79.     The Nieves Lawsuit alleges Uber is liable for the conduct of Driver Edwin M. Lim. *See, e.g.*, **Exhibit G**, ¶¶ 22–26.

80.     Upon information and belief, Maya issued Maya Policy No. 1-MA019805 to Driver Edwin M. Lin.

81.     Driver Edwin M. Lin is an "insured" under Maya Policy No. 1-MA019805.

82.     The Nieves Lawsuit is a "suit" under Maya Policy No. 1-MA019805.

83.     Maya Policy No. 1-MA019805 provides primary auto liability coverage for Driver Edwin M. Lin for the damages alleged in the Nieves Lawsuit. Maya owes a primary duty to defend and indemnify Driver Edwin M. Lin against the damages sought by the plaintiff(s) in the Nieves Lawsuit.

84.     Upon information and belief, Maya has defended and/or indemnified Driver Edwin M. Lin against the damages sought by the plaintiff(s) in the Nieves Lawsuit.

85.     Uber is an "insured" under Maya Policy No. 1-MA019805 because the Nieves Lawsuit alleges that Uber is liable for the conduct of Driver Edwin M. Lin. *See, e.g.,* **Exhibit G**, ¶¶ 22–26.

86.     On July 6, 2023, Uber, on behalf of itself and/or its relevant subsidiaries, tendered its defense and indemnity to Maya in writing for the Nieves Lawsuit.

87.     Maya had notice of the Nieves Lawsuit when Driver Edwin M. Lin or the underlying claimants first tendered the Nieves Lawsuit to Maya.

88.     On July 6, 2023, Maya disclaimed coverage for Uber in the Nieves Lawsuit. A copy of Maya's disclaimer letter is attached as **Exhibit H** .

89.     Maya has wrongfully refused to defend and indemnify Uber in the Nieves Lawsuit.

90.     Uber has been forced to defend itself in the Nieves Lawsuit.

91.     Uber will continue to incur costs to defend the Nieves Lawsuit.

92.     Further, Uber will incur additional damages as a result of Uber's alleged liability for the conduct of the Driver in the Nieves Lawsuit.

## THE MAISONET LAWSUIT – TENDER & DENIAL

93.     Uber is named as a defendant in the Underlying Lawsuit filed by Gloria Maisonet on November 30, 2020, in New York Supreme Court, Kings County, Index No. 523738/2020 (the "Maisonet Lawsuit"). The complaint in the Maisonet Lawsuit is attached as **Exhibit I**.

94.     The Maisonet Lawsuit alleges Uber is liable for the conduct of Driver Tendi Lama. *See, e.g.*, **Exhibit I**, ¶¶ 33–43, 199–201, 214–19.

95.     Upon information and belief, Maya issued Maya Policy No. MA020821 to Driver Tendi Lama.

96.     Driver Tendi Lama is an "insured" under Maya Policy No. MA020821.

97.     The Maisonet Lawsuit is a "suit" under Maya Policy No. MA020821.

98.     Maya Policy No. MA020821 provides primary auto liability coverage for Driver Tendi Lama for the damages alleged in the Maisonet Lawsuit. Maya owes a primary duty to defend

and indemnify Driver Tendi Lama against the damages sought by the plaintiff(s) in the Maisonet Lawsuit.

99.     Upon information and belief, Maya has defended and/or indemnified Driver Tendi Lama against the damages sought by the plaintiff(s) in the Maisonet Lawsuit.

100.    Uber is an "insured" under Maya Policy No. MA020821 because the Maisonet Lawsuit alleges that Uber is liable for the conduct of Driver Tendi Lama. *See, e.g.*, **Exhibit I**, ¶¶ 33–43, 199–201, 214–19.

101.    On July 17, 2023, Uber, on behalf of itself and/or its relevant subsidiaries, tendered its defense and indemnity to Maya in writing for the Maisonet Lawsuit.

102.    Maya had notice of the Maisonet Lawsuit when Driver Tendi Lama or the underlying claimants first tendered the Maisonet Lawsuit to Maya.

103.    On July 20, 2023, Maya disclaimed coverage for Uber in the Maisonet Lawsuit. A copy of Maya's disclaimer letter is attached as **Exhibit J**.

104.    Maya has wrongfully refused to defend and indemnify Uber in the Maisonet Lawsuit.

105.    Uber has been forced to defend itself in the Maisonet Lawsuit.

106.    Uber will continue to incur costs to defend the Maisonet Lawsuit.

107.    Further, Uber will incur additional damages as a result of Uber's alleged liability for the conduct of the Driver in the Maisonet Lawsuit.

## THE MARTINEZ LAWSUIT – TENDER & DENIAL

108.    Uber is named as a defendant in the Underlying Lawsuit filed by Argentina Martinez on February 28, 2022, in New York Supreme Court, Queens County, Index No.

704434/2022 (the "Martinez Lawsuit"). The complaint in the Martinez Lawsuit is attached as **Exhibit K**.

109.    The Martinez Lawsuit alleges Uber is liable for the conduct of Driver Vladislav Teplinskiy. *See, e.g.*, **Exhibit K**, ¶¶ 47–49.

110.    Upon information and belief, Maya issued Maya Policy No. 1-MA020286 to Driver Vladislav Teplinskiy.

111.    Driver Vladislav Teplinskiy is an "insured" under Maya Policy No. 1-MA020286.

112.    The Martinez Lawsuit is a "suit" under Maya Policy No. 1-MA020286.

113.    Maya Policy No. 1-MA020286 provides primary auto liability coverage for Driver Vladislav Teplinskiy for the damages alleged in the Martinez Lawsuit. Maya owes a primary duty to defend and indemnify Driver Vladislav Teplinskiy against the damages sought by the plaintiff(s) in the Martinez Lawsuit.

114.    Upon information and belief, Maya has defended and/or indemnified Driver Vladislav Teplinskiy against the damages sought by the plaintiff(s) in the Martinez Lawsuit.

115.    Uber is an "insured" under Maya Policy No. 1-MA020286 because the Martinez Lawsuit alleges that Uber is liable for the conduct of Driver Vladislav Teplinskiy. *See, e.g.*, **Exhibit K**, ¶¶ 47–49.

116.    On March 15, 2023, Uber, on behalf of itself and/or its relevant subsidiaries, tendered its defense and indemnity to Maya in writing for the Martinez Lawsuit.

117.    Maya had notice of the Martinez Lawsuit when Driver Vladislav Teplinskiy or the underlying claimants first tendered the Martinez Lawsuit to Maya.

118.    On April 24, 2023, Maya disclaimed coverage for Uber in the Martinez Lawsuit. A copy of Maya's disclaimer letter is attached as **Exhibit L**.

119.     Maya has wrongfully refused to defend and indemnify Uber in the Martinez Lawsuit.

120.     Uber has been forced to defend itself in the Martinez Lawsuit.

121.     Uber will continue to incur costs to defend the Martinez Lawsuit.

122.     Further, Uber will incur additional damages as a result of Uber's alleged liability for the conduct of the Driver in the Martinez Lawsuit.

## COUNT I
### (Declaratory Judgment on Defendant's
### Duty to Defend Uber)

123.     Uber hereby incorporates the previous paragraphs of this Complaint, as if fully set forth herein.

124.     The automobile liability insurance coverage provided by Maya under each respective Maya Policy was in full force and effect on the date of the alleged loss in each Underlying Lawsuit.

125.     The automobile liability insurance coverage provided by Maya under the respective Maya Policy covers the subject vehicle in each Underlying Lawsuit.

126.     The automobile liability insurance coverage provided by Maya under the respective Maya Policy covers the Driver allegedly at fault in each Underlying Lawsuit.

127.     The automobile liability insurance coverage provided by Maya under the respective Maya Policy covers the damages sought by the plaintiff(s) in each Underlying Lawsuit.

128.     Maya received timely notice of each Underlying Lawsuit and/or was not prejudiced by the timing of the notice of each Underlying Lawsuit.

129.     Maya has no defenses to coverage for each Underlying Lawsuit.

130.    Maya is obligated under the terms of each Maya Policy to defend Uber against any suit seeking damages against Uber for Uber's liability for the conduct of the Drivers.

131.    Each Underlying Lawsuit alleges Uber is liable for the conduct of the respective Driver.

132.    Uber is an insured under the Maya Policy applicable to each Underlying Lawsuit.

133.    Maya's duty to defend Uber under each Maya Policy was triggered when Maya first received notice of the respective Underlying Lawsuit.

134.    Maya has refused to defend Uber in each of the Underlying Lawsuits. *See* **Exhibits D, F, H, J, L**.

135.    The allegations in the complaint of each Underlying Lawsuit bring the Underlying Lawsuits against Uber at least potentially within the coverage underwritten by Maya under the respective Maya Policy.

136.    Maya's duty to defend under the Maya Policies is exceedingly broad.

137.    Whether Uber is actually liable for the conduct of the Drivers as alleged in the Underlying Lawsuits is irrelevant to Maya's duty to defend Uber under the Maya Policies.

138.    Uber's liability for the conduct of the Drivers is relevant to the merits of the claims against Uber in the Underlying Lawsuits, and not collateral to them.

139.    Maya may not rely on evidence extrinsic to the complaints of the Underlying Lawsuits to disclaim its duty to defend Uber against the Underlying Lawsuits.

140.    Maya has a duty to defend Uber in each Underlying Lawsuit until (and if) facts are established in that Underlying Lawsuit disproving coverage under the terms of the respective Maya Policy.

141.    Uber has demanded that Maya assume its responsibilities and obligations to Uber, but Maya has failed to comply with its obligation to defend Uber in the Underlying Lawsuits, and otherwise has failed to perform or acknowledge its obligations as an insurer of Uber.

142.    Uber has a tangible legal interest in determining whether Maya breached its defense obligations under the Maya Policies in connection with the Underlying Lawsuits, and Maya has an opposing interest.

143.    An actual and justiciable controversy has arisen and currently exists between Uber and Maya regarding Maya's defense obligations under the Maya Policies in connection with the Underlying Lawsuits.

144.    Maya has taken the position that it has not breached its defense obligations by refusing to defend Uber in the Underlying Lawsuits.

145.    Uber, by contrast, has taken the position that Maya did breach its defense obligations by failing to defend Uber in the Underlying Lawsuits.

146.    Declaratory relief by this Court is necessary and appropriate and will terminate the uncertainty or controversy giving rise to this cause of action.

147.    Uber is entitled to a declaration that under the terms of each Maya Policy, Maya has a duty to defend Uber against the Underlying Lawsuits.

## COUNT II
### (Declaratory Judgment on Uber's
### Right to Independent Counsel)

148.    Uber hereby incorporates the previous paragraphs of this Complaint, as if fully set forth herein.

149.    Each Underlying Lawsuit alleges that Uber is responsible for the conduct of the respective Driver under a vicarious liability theory or other respondeat-superior liability theory.

150.    Some of the Underlying Lawsuits also allege other theories of liability against Uber.

151.    Maya has an interest to defeat claims against Uber brought under a vicarious liability or other respondeat-superior liability theory, which trigger Maya's duty to indemnify Uber under the Maya Policies, but not under other theories, which may not trigger Maya's duty to indemnify Uber under the Maya Policies.

152.    Maya's interests in defending the Underlying Lawsuits conflict with Uber's interests as a defendant in the Underlying Lawsuits.

153.    Maya has a duty to provide independent counsel to Uber in the Underlying Lawsuits.

154.    Uber has demanded that Maya assume its responsibilities and obligations to Uber, including Uber's right to independent counsel, but Maya refused to comply with its obligation to provide independent counsel for the defense of Uber in the Underlying Lawsuits.

155.    Uber has a tangible legal interest in determining whether Maya has a duty under the Maya Policies to provide independent counsel to Uber in the Underlying Lawsuits, and Maya has an opposing interest.

156.    An actual and justiciable controversy has arisen and currently exists between Uber and Maya regarding Maya's obligations under the Maya Policies in connection to providing independent counsel to Uber in the Underlying Lawsuits.

157.    Maya has taken the position that it does not have a duty to provide independent counsel to Uber in the Underlying Lawsuits.

158.    Uber, by contrast, has taken the position that Maya has a duty to provide independent counsel to Uber in the Underlying Lawsuits.

159.    Declaratory relief by this Court is necessary and appropriate and will terminate the uncertainty or controversy giving rise to this cause of action.

160.    Uber is entitled to a declaration that under the terms of each Maya Policy, Uber has a right to be defended in the Underlying Lawsuits by independent counsel of its choosing, whose reasonable fees are to be paid by Maya.

## COUNT III
### (Declaratory Judgment on Defendant's
### Duty to Indemnify Uber)

161.    Uber hereby incorporates the previous paragraphs of this Complaint, as if fully set forth herein.

162.    Maya is obligated under the terms of the Maya Policies to indemnify Uber in any Underlying Lawsuit to the extent of Uber's alleged liability for the conduct of the Drivers.

163.    As of the date of this Complaint, it remains undetermined by the respective finder(s) of fact whether Uber is liable for the conduct of the respective Driver in each of the Underlying Lawsuits.

164.    Uber has a tangible legal interest in determining whether Maya has a duty under the Maya Policies to indemnify Uber in any Underlying Lawsuit to the extent of Uber's alleged liability for the conduct of the Drivers.

165.    An actual and justiciable controversy has arisen and currently exists between Uber and Maya regarding Maya's obligations under the Maya Policies in connection to indemnifying Uber in any Underlying Lawsuit to the extent of Uber's alleged liability for the conduct of the Drivers.

166. Maya has taken the position that it does not have a duty to indemnify Uber in the Underlying Lawsuits. *See* **Exhibits D, F, H, J, L**.

167. Uber, by contrast, has taken the position that Maya has a duty to indemnify Uber in any Underlying Lawsuit to the extent of Uber's alleged liability for the conduct of the Drivers.

168. Declaratory relief by this Court is necessary and appropriate and will terminate the uncertainty or controversy giving rise to this cause of action.

169. Uber is entitled to a declaration that under the terms of each Maya Policy, Maya has a duty to indemnify Uber in any Underlying Lawsuit to the extent of Uber's alleged liability for the conduct of the Drivers.

### COUNT IV
#### (Breach of Contract for the Cajigas Lawsuit)

170. Uber hereby incorporates the previous paragraphs of this Complaint, as if fully set forth herein.

171. Maya Policy No. 1-MA005690 constitutes a valid and enforceable contract of insurance between Maya and Driver Mostafa Ibrahimi.

172. Uber is a beneficiary of Maya Policy No. 1-MA005690 under the terms of Maya Policy No. 1-MA005690.

173. Maya owes duties to Uber under the terms of Maya Policy No. 1-MA005690.

174. Uber is an "insured" under the terms of Maya Policy No. 1-MA005690.

175. Maya Policy No. 1-MA005690 was in full force and effect on the date of loss in the Cajigas Lawsuit.

176. Maya's duties to Uber under Maya Policy No. 1-MA005690 were triggered when Maya first received notice of the Cajigas Lawsuit.

177.    Maya has breached its contractual obligations under Maya Policy No. 1-MA005690 by refusing to defend Uber in the Cajigas Lawsuit, as required under Maya Policy No. 1-MA005690.

178.    Maya has breached its contractual obligations by refusing to provide independent counsel to Uber in the Cajigas Lawsuit, as required under Maya Policy No. 1-MA005690.

179.    Maya has breached its contractual obligations by refusing to indemnify Uber in the Cajigas Lawsuit to the extent of Uber's alleged liability for the conduct of Driver Mostafa Ibrahimi, as required under Maya Policy No. 1-MA005690.

180.    As a direct result of Maya's breach, Uber has been and will be deprived of the full benefits of the insurance coverage Maya underwrote.

181.    As a direct result of Maya' breach, Uber has been forced to incur and will continue to incur additional consequential damages, including without limitation, attorneys' fees and other expenses in bringing this action.

182.    As a direct and proximate result of the aforesaid actions by Maya, Uber has been damaged in an amount to be proved at trial for all unreimbursed damages, costs and payments, and all other sums incurred to date.

## COUNT V
### (Breach of Contract for the Elliott Lawsuit)

183.    Uber hereby incorporates the previous paragraphs of this Complaint, as if fully set forth herein.

184.    Maya Policy No. 1-MA021796 constitutes a valid and enforceable contract of insurance between Maya and Driver Christopher Graham.

185.    Uber is a beneficiary of Maya Policy No. 1-MA021796 under the terms of Maya Policy No. 1-MA021796.

186.    Maya owes duties to Uber under the terms of Maya Policy No. 1-MA021796.

187.    Uber is an "insured" under the terms of Maya Policy No. 1-MA021796.

188.    Maya Policy No. 1-MA021796 was in full force and effect on the date of loss in the Elliott Lawsuit.

189.    Maya's duties to Uber under Maya Policy No. 1-MA021796 were triggered when Maya first received notice of the Elliott Lawsuit.

190.    Maya has breached its contractual obligations under Maya Policy No. 1-MA021796 by refusing to defend Uber in the Elliott Lawsuit, as required under Maya Policy No. 1-MA021796.

191.    Maya has breached its contractual obligations by refusing to provide independent counsel to Uber in the Elliott Lawsuit, as required under Maya Policy No. 1-MA021796.

192.    Maya has breached its contractual obligations by refusing to indemnify Uber in the Elliott Lawsuit to the extent of Uber's alleged liability for the conduct of Driver Christopher Graham, as required under Maya Policy No. 1-MA021796.

193.    As a direct result of Maya's breach, Uber has been and will be deprived of the full benefits of the insurance coverage Maya underwrote.

194.    As a direct result of Maya' breach, Uber has been forced to incur and will continue to incur additional consequential damages, including without limitation, attorneys' fees and other expenses in bringing this action.

195.    As a direct and proximate result of the aforesaid actions by Maya, Uber has been damaged in an amount to be proved at trial for all unreimbursed damages, costs and payments, and all other sums incurred to date.

## COUNT VI
**(Breach of Contract for the Nieves Lawsuit)**

196.    Uber hereby incorporates the previous paragraphs of this Complaint, as if fully set forth herein.

197.    Maya Policy No. 1-MA019805 constitutes a valid and enforceable contract of insurance between Maya and Driver Edwin M. Lin.

198.    Uber is a beneficiary of Maya Policy No. 1-MA019805 under the terms of Maya Policy No. 1-MA019805.

199.    Maya owes duties to Uber under the terms of Maya Policy No.1-MA019805.

200.    Uber is an "insured" under the terms of Maya Policy No. 1-MA019805.

201.    Maya Policy No. 1-MA019805 was in full force and effect on the date of loss in the Nieves Lawsuit.

202.    Maya's duties to Uber under Maya Policy No. 1-MA019805 were triggered when Maya first received notice of the Nieves Lawsuit.

203.    Maya has breached its contractual obligations under Maya Policy No. 1-MA019805 by refusing to defend Uber in the Nieves Lawsuit, as required under Maya Policy No. 1-MA019805.

204.    Maya has breached its contractual obligations by refusing to provide independent counsel to Uber in the Nieves Lawsuit, as required under Maya Policy No. 1-MA019805.

205.    Maya has breached its contractual obligations by refusing to indemnify Uber in the Nieves Lawsuit to the extent of Uber's alleged liability for the conduct of Driver Edwin M. Lim, as required under Maya Policy No. 1-MA019805.

206.    As a direct result of Maya's breach, Uber has been and will be deprived of the full benefits of the insurance coverage Maya underwrote.

207.    As a direct result of Maya' breach, Uber has been forced to incur and will continue to incur additional consequential damages, including without limitation, attorneys' fees and other expenses in bringing this action.

208.    As a direct and proximate result of the aforesaid actions by Maya, Uber has been damaged in an amount to be proved at trial for all unreimbursed damages, costs and payments, and all other sums incurred to date.

<u>**COUNT VII**</u>
**(Breach of Contract for the Maisonet Lawsuit)**

209.    Uber hereby incorporates the previous paragraphs of this Complaint, as if fully set forth herein.

210.    Maya Policy No. MA020821 constitutes a valid and enforceable contract of insurance between Maya and Driver Tendi Lama.

211.    Uber is a beneficiary of Maya Policy No. MA020821 under the terms of Maya Policy No. MA020821.

212.    Maya owes duties to Uber under the terms of Maya Policy No. MA020821.

213.    Uber is an "insured" under the terms of Maya Policy No. MA020821.

214.    Maya Policy No. MA020821 was in full force and effect on the date of loss in the Maisonet Lawsuit.

215.    Maya's duties to Uber under Maya Policy No. MA020821 were triggered when Maya first received notice of the Maisonet Lawsuit.

216.    Maya has breached its contractual obligations under Maya Policy No. MA020821 by refusing to defend Uber in the Maisonet Lawsuit, as required under Maya Policy No. MA020821.

217.    Maya has breached its contractual obligations by refusing to provide independent counsel to Uber in the Maisonet Lawsuit, as required under Maya Policy No. MA020821.

218.    Maya has breached its contractual obligations by refusing to indemnify Uber in the Maisonet Lawsuit to the extent of Uber's alleged liability for the conduct of Driver Tendi Lama, as required under Maya Policy No. MA020821.

219.    As a direct result of Maya's breach, Uber has been and will be deprived of the full benefits of the insurance coverage Maya underwrote.

220.    As a direct result of Maya' breach, Uber has been forced to incur and will continue to incur additional consequential damages, including without limitation, attorneys' fees and other expenses in bringing this action.

221.    As a direct and proximate result of the aforesaid actions by Maya, Uber has been damaged in an amount to be proved at trial for all unreimbursed damages, costs and payments, and all other sums incurred to date.

## COUNT VIII
### (Breach of Contract for the Martinez Lawsuit)

222.    Uber hereby incorporates the previous paragraphs of this Complaint, as if fully set forth herein.

223.    Maya Policy No. 1-MA020286 constitutes a valid and enforceable contract of insurance between Maya and Driver Vladislav Teplinskiy.

224.    Uber is a beneficiary of Maya Policy No. 1-MA020286 under the terms of Maya Policy No. 1-MA020286.

225.    Maya owes duties to Uber under the terms of Maya Policy No. 1-MA020286.

226.    Uber is an "insured" under the terms of Maya Policy No. 1-MA020286.

227.    Maya Policy No. 1-MA020286 was in full force and effect on the date of loss in the Martinez Lawsuit.

228.    Maya's duties to Uber under Maya Policy No. 1-MA020286 were triggered when Maya first received notice of the Martinez Lawsuit.

229.    Maya has breached its contractual obligations under Maya Policy No. 1-MA020286 by refusing to defend Uber in the Martinez Lawsuit, as required under Maya Policy No. 1-MA020286.

230.    Maya has breached its contractual obligations by refusing to provide independent counsel to Uber in the Martinez Lawsuit, as required under Maya Policy No. 1-MA020286.

231.    Maya has breached its contractual obligations by refusing to indemnify Uber in the Martinez Lawsuit to the extent of Uber's alleged liability for the conduct of Driver Vladislav Teplinskiy, as required under Maya Policy No. 1-MA020286.

232.    As a direct result of Maya's breach, Uber has been and will be deprived of the full benefits of the insurance coverage Maya underwrote.

233.    As a direct result of Maya' breach, Uber has been forced to incur and will continue to incur additional consequential damages, including without limitation, attorneys' fees and other expenses in bringing this action.

234.    As a direct and proximate result of the aforesaid actions by Maya, Uber has been damaged in an amount to be proved at trial for all unreimbursed damages, costs and payments, and all other sums incurred to date.

## **JURY DEMAND**

235.    Uber demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Uber respectfully requests that this Court enter judgment against Maya:

a.      Declaring that, under the terms of the Maya Policies, Maya has a duty to defend Uber against the Underlying Lawsuits;

b.      Declaring that, under the terms of the Maya Policies, Uber has a right to be defended in the Underlying Lawsuits by independent counsel of its choosing, whose reasonable fees are to be paid by Maya;

c.      Declaring that, under the terms of the Maya Policies, Maya has a duty to indemnify Uber in any Underlying Lawsuit to the extent of Uber's alleged liability for the conduct of the Drivers;

d.      Awarding Uber actual money damages according to proof at trial, plus interest according to applicable law for: Maya's breaches of the contractual obligations set forth in the Maya Policies, including Maya's failure to (1) pay the defense costs incurred by Uber in defense of the Underlying Lawsuits and (2) indemnify Uber to the extent of Uber's alleged legal liability for the conduct of the Drivers; and

e.      Granting such other and further relief as this Court deems just and proper, including awarding Uber the attorneys' fees and costs incurred by Uber in connection with this action.

Dated: New York, New York.
       February 16, 2024

Respectfully submitted,

PERKINS COIE LLP


By: */s/ Adam R. Mandelsberg*
    Adam R. Mandelsberg
    1155 Avenue of the Americas, 22nd Floor
    New York, NY 10036-2711
    Telephone: +1.212.261.6867
    Facsimile: +1.212.399.8067
    AMandelsberg@perkinscoie.com

    Selena J. Linde
    *Pro Hac Vice forthcoming*
    700 Thirteenth Street, N.W., Suite 800
    Washington, D.C. 20005-3960
    Telephone: +1.202.654.6200
    Facsimile: +1.202.654.6211
    SLinde@perkinscoie.com

    Juan J. Fonseca Angel
    *Pro Hac Vice forthcoming*
    33 E Main St Ste 201
    Madison, WI 53703-3095
    Telephone: +1.608.294.4001
    Facsimile: + 1.608.663.7499
    JFonsecaAngel@perkinscoie.com

    *Attorneys for Plaintiffs Uber*
    *Technologies, Inc., Uber USA, LLC,*
    *Rasier-NY, LLC, Rasier-CA, LLC,*
    *Vierzehn-NY, LLC, and Rasier, LLC*